In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2629

JOHN BYRNE,

*Plaintiff-Appellant*,

*v.*

AVON PRODUCTS, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 5378—**Milton I. Shadur**, *Judge*.

ARGUED APRIL 14, 2003—DECIDED MAY 9, 2003

Before CUDAHY, POSNER, and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. After more than four years of highly regarded service as the only stationary engineer on the night shift at Avon Products, John Byrne started to read and sleep on the job. Early in November 1998 a co-worker reported finding Byrne asleep in the carpenter's shop, which night employees sometimes use as a break room. Avon checked security logs (employees need a coded card to enter the carpenter's shop) and learned that Byrne had begun to frequent it. To investigate further, Avon installed a camera, which on its first night of operation revealed that Byrne spent about three hours

of his shift reading or sleeping. The following shift Byrne lingered about six hours in the carpenter's shop, most of that time asleep with the lights off. Managers tried to discuss matters with Byrne on his next scheduled shift (November 16-17) but were unable to do so because he left work early, telling a co-worker that he was not feeling well and would be out the rest of the week. Calls were answered by one of his sisters, who told Avon that Byrne was "very sick". James Sparks, Avon's facilities engineer, finally reached Byrne, who mumbled several odd phrases but agreed to attend a meeting the afternoon of November 17. When Byrne did not appear, he was fired for that omission plus sleeping on the job. Byrne was in no shape for a conference, however, as he was suffering from depression. Relatives took him to the hospital after talking him out of a room in which he had barricaded himself. A psychiatrist concluded that by November 16 Byrne had begun to hallucinate; he attempted suicide on November 17 and during another panic attack tried to flush his head down a toilet. But two months of treatment enabled Byrne to surmount his mental difficulties. When Avon would not take him back, Byrne filed this suit under the Americans with Disabilities Act and the Family and Medical Leave Act. The district court granted summary judgment to Avon, ruling that neither statute excuses misconduct on the job. 2002 U.S. Dist. LEXIS 9252 (N.D. Ill. May 22, 2002).

The ADA forbids employers to discriminate against any "qualified individual with a disability because of the disability." 42 U.S.C. §12112(a). "Qualified individual with a disability" is a defined term: "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). From November 1998 through mid-January 1999 Byrne could not stay awake (sleep disturbance is

a common symptom of depression's onset) and had become too suspicious of his co-workers to tolerate them. As a result he was incapable of working. Byrne acknowledges this but contends that he should have been accommodated by being allowed *not* to work. That is not what the ADA says. The sort of accommodation contemplated by the Act is one that will allow the person to "perform the essential functions of the employment position". Not working is not a means to perform the job's essential functions. An inability to do the job's essential tasks means that one is not "qualified"; it does not mean that the employer must excuse the inability.

Time off may be an apt accommodation for intermittent conditions. Someone with arthritis or lupus may be able to do a given job even if, for brief periods, the inflammation is so painful that the person must stay home. See *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998). Cf. *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 498 (7th Cir. 2000) (part-time work may accommodate a person recovering from a medical problem). But Byrne did not want a few days off or a part-time position; his only proposed accommodation is not working for an extended time, which as far as the ADA is concerned confesses that he was not a "qualified individual" in late 1998. "The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual." *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999). Spotty attendance by itself may show lack of qualification. *See EEOC v. Yellow Freight System*, *Inc.*, 253 F.3d 943 (7th Cir. 2001) (en banc). Inability to work for a multi-month period removes a person from the class protected by the ADA.

Although the ADA applies only to those who can do the job, the FMLA affords those who can't work as a result of a "serious health condition" up to 12 weeks of leave in a year. 29 U.S.C. §2612(a)(1)(D). Byrne's condition was se-

rious, and he was ready to work again before the 12 weeks ran out.

FMLA leave depends on the employer's knowledge of a qualifying condition, and Byrne contends that his sister's statement on November 17 that he was "very sick" plus news of his hospitalization, which reached Avon the next day, provided the necessary information. Contrast *Collins v. NTN-Bower Corp.*, 272 F.3d 1006 (7th Cir. 2001) (employee's claim to be "sick" is not enough). But the district judge thought that notice on November 17 came too late. For the preceding ten days or so, Byrne had been sleeping on the job, which justified his discharge. (The district judge added, and we agree, that the record would not permit a reasonable trier of fact to conclude that Avon discharged Byrne because of, rather than in spite of, the information about Byrne's mental health that it received on November 17 and 18.)

Perhaps, however, Byrne's unusual behavior (recall that he had been a model employee until November 1998) was *itself* notice that something had gone medically wrong, or perhaps notice was excused—for the statute requires notice only if the need for leave is foreseeable. See 29 U.S.C. §2612(e); *Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969 (7th Cir. 2000). It is not beyond the bounds of reasonableness to treat a dramatic change in behavior as notice of a medical problem. That's clear enough if a worker collapses: an employer might suspect a stroke, or a heart attack, or insulin deficiency, or some other serious condition. It would be silly to require the unconscious worker to inform the employer verbally or in writing. Unusual behavior gives all the notice required, and no employer would be allowed to say "I fired this stricken person for shirking on company time, and by the time a physician arrived and told me why the worker was unconscious it was too late to claim FMLA leave." A sudden change may supply notice even if the employee is lucid:

someone who breaks an arm obviously requires leave. It is enough under the FMLA if the employer knows of the employee's need for leave; the employee need not mention the statute or demand its benefits. See, e.g., *Price v. Ft. Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997).

Byrne's situation is more complex because he hid in the carpenter's shop for several days running. This is consistent with onset of a disabling mental condition but also could be no more than malingering. Why, one might ask, did Byrne not notify supervisors and seek time off earlier—or just leave word with a co-worker and go home, as he did on November 17? That poses a medical question: Was someone in Byrne's state *able* to give notice? Medical information in the record would permit (though not compel) a jury to conclude that by early November 1998 Byrne not only was unable to regulate his sleep cycles but also had become suspicious of other people and was powerless to communicate his condition effectively. A person unable to give notice is excused from doing so.

> When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, *except in extraordinary circumstances where such notice is not feasible.* In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.

29 C.F.R. §825.303(a) (emphasis added). If a person with "major depression" (the psychiatrist's description of

Byrne's condition) could not have told his employer about the problem and requested leave, then notice was not "feasible" and was unnecessary even if the change in behavior was not enough to alert Avon to a need for medical leave.

If a trier of fact believes either (a) that the change in behavior was enough to notify a reasonable employer that Byrne suffered from a serious health condition, or (b) that Byrne was mentally unable either to work or give notice early in November 1998, then he would be entitled to FMLA leave covering the period that Avon treats as misconduct. These are independent possibilities. Either one would entitle Byrne to reinstatement, see 29 U.S.C. §2614(a), when the "serious health condition" had abated. Instead of treating Byrne's final two weeks as goldbricking, Avon should have classified this period as medical leave—if Byrne indeed was unable to give verbal or written notice, or if the sudden change in his behavior was itself notice of his mental problem. In either event, the FMLA would require adjustment of Byrne's pay status, for leave under this act is unpaid except to the extent that an employee has accrued medical or vacation leave available. 29 U.S.C. §2612(c), (d). A judge would be entitled, under circumstances such as these, to require the employee to agree, as a condition of pursuing relief under the FMLA, that unproductive time preceding the discharge be reclassified as unpaid leave (with restitution of wages received) or taken as vacation or medical leave if any is available. Because the district court did not consider the possibility that Byrne's last two weeks should be reclassified as FMLA leave, it did not consider what adjustments along these lines may be appropriate. That subject should be handled promptly on remand.

VACATED AND REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*