**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted November 21, 2005[*]
Decided January 3, 2006

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 04-3390

| | |
|---|---|
| GLORIA PERKINS,<br>　　*Plaintiff-Appellant,*<br><br>　　*v.*<br><br>AMERITECH CORP., n/k/a SBC<br>Teleholdings, Inc.,<br>　　*Defendant-Appellee.* | Appeal from the United States District Court<br>for the Northern District of Illinois, Eastern<br>Division.<br><br>No. 00 C 5655<br><br>Geraldine Soat Brown,<br>*Magistrate Judge.* |

**O R D E R**

In this appeal Gloria Perkins challenges the district court's grant of summary judgment for Ameritech Corporation, n/k/a SBC Teleholdings, Inc., on her claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(a)(2).

Perkins, who worked as a Customer Accounts Specialist, was diagnosed in 1994 with depression and anxiety. Her condition, according to Perkins, caused anxiety attacks and sleeplessness, and generally prevented her from working. As a result, she took disability leave for more than two months in 1995, almost five months in 1996, and part of January 1997. Perkins testified in her deposition that she sought "off-line" work, which she suggests would have allowed her to avoid contact with customers, as an accommodation, but she was informed by Ameritech that her job description required contact with customers.

In 1998, Perkins's condition worsened and she was diagnosed with fibromyalgia. Ameritech's Occupational Medicine Department ("OMD") granted her "illness paid leave" and "disability leave" from July to September 1998. From October 1998 through January 1999, Ameritech permitted Perkins occasional absences for doctor visits, under the Family Medical Leave Act ("FMLA"). Perkins testified that, at the beginning of 1999, she again requested work that did not involve customer contact, but, her supervisor declined the request. Perkins took her last medical leave while employed at Ameritech from late January through mid-May, 1999. After Ameritech declined her requests for further leave, Perkins finally returned to work on August 2, 1999.

Perkins' position with Ameritech was subject to an attendance policy, and the company began notifying her in 1998 that her attendance was unsatisfactory. She missed work due to both her medical conditions and other non-medical difficulties, such as car trouble. In that year she accumulated enough violations to receive a warning for ongoing attendance problems. Ameritech issued a "final written warning" to Perkins in August 1999. Then, in late 1999, Perkins accumulated three additional attendance violations. Ameritech chose to group these as a single violation for purposes of its attendance policy and suspended her for three days.

After serving her suspension, Perkins was again late for work on December 10. In accordance with the Collective Bargaining Agreement ("CBA"), Perkins was suspended pending dismissal, and the union grieved the decision. Perkins met with the Review Board and entered into a back-to-work agreement, which allowed her to return to work but stated that Ameritech could terminate her for cause if she incurred another attendance violation. Perkins also agreed to withdraw all of her pending grievances. She returned to Ameritech on January 3, but on January 10 she resigned. She testified that she felt forced to resign by the back-to-work agreement's "stipulations," and that she felt unable to function or work.

Perkins filed her first Equal Employment Opportunity Commission charge on January 5, 2000, alleging age and disability discrimination. In that charge, as relevant here, she alleged that Ameritech committed disability discrimination when

it removed her from leave on May 17, 1999, placed her on a final warning for attendance violations, denied her request for accommodation, suspended her pending termination on December 10, 1999, and required her (in the back-to-work agreement) not to take disability leave. Perkins filed a second EEOC charge on February 20, which further alleged that she felt "forced to quit" because of the allegations in her first EEOC charge.

The district court, after granting Perkins's motion to withdraw her claims based on age discrimination and failure to promote, granted Ameritech summary judgment on her ADA claims. The court first found that Perkins' allegations of discrimination were discrete events, and therefore only those events occurring on or after March 12, 1999--300 days before her first EEOC charge--were actionable in federal court. Next, the court found that Perkins could not bring claims under the ADA because she did not meet her burden of showing she was a qualified individual. Third, the court found that Perkins's constructive discharge claim--to the extent she even raised such a claim in her complaint or filings--could not succeed because she voluntarily resigned. Finally, the court concluded that Perkins could not pursue a retaliation claim because retaliation was not alleged or sufficiently related to the allegations in her EEOC charge.

Our review of the district court's grant of summary judgment is de novo. *See Karraker v. Rent-A-Center, Inc.,* 411 F.3d 831, 834 (7th Cir. 2005). Perkins's strongest argument is that the district court wrongly granted summary judgment for Ameritech because it ignored facts that showed Ameritech failed to engage in the interactive process required by the ADA. She points to the deposition of the supervisor who monitored her attendance in which the supervisor did not recall her request for accommodation despite the presence of evidence to the contrary in the record. She also argues that it was error for the district court to concentrate on her attendance record, rather than "review[ing] the entire case as a whole."

The district court properly focused on Perkins's poor attendance because her failure to appear regularly for work removed her from the class of "qualified individuals" protected by the ADA. To succeed on a failure to accommodate claim, "a plaintiff must show that (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005). A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Perkins was absent for several months each year in 1995, 1996 and 1998. Her attendance declined in 1999 to the point where, according to her testimony, she was

absent "most of the time" during the first half of the year. She argues that Ameritech did not follow the CBA or FMLA when it evaluated the attendance violations that eventually led to her suspension pending dismissal. But, the possibility that she can point to individual dates on which Ameritech misapplied its attendance policy is not tantamount to an attack on the fact that she was absent from work for several multi-month periods from 1995 onward. It is also irrelevant, for purposes of the ADA, that some of her absences were caused by illness or potentially covered under the FMLA. The FMLA--which was not a basis for Perkins's claims in the district court--may afford someone suffering from a "serious health condition" up to 12 weeks of leave a year, but the ADA "applies only to those who can do the job." *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). Thus, even if her absenteeism was tied to her illness, "[i]nability to work for a multi-month period removes a person from the class protected by the ADA." *Id*. To the extent Perkins also argues that the district court erred when it dismissed her constructive discharge claim, that argument fails as well because it relies on Perkins's ability to claim protection under the ADA.

Perkins next suggests that the district court erred when it determined that her retaliation claim was not reasonably related to her EEOC charge. Here, she seems to suggest that Ameritech retaliated against her because she requested accommodation. In the district court, however, she alleged that the retaliation occurred "because she filed grievances with her union regarding Ameritech's arbitrary attendance policies." A plaintiff may not shift the basis for her claim on appeal. *See Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1033 (7th Cir. 2004). Moreover, Perkins's brief fails to present a cogent argument that the district court erred when it ruled that her EEOC charge did not allege retaliation or facts related to her alleged attendance policy grievances. The district court did not err when it determined that Perkins failed to administratively exhaust her retaliation claim. *See Geldon v. South Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005); *see also EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 832-33 (7th Cir. 2005) (discussing administrative exhaustion).

Finally, Perkins raises other arguments regarding the scope of the evidence considered by the district court and Ameritech's alleged violation of the FMLA. These arguments, however, are undeveloped or raised for the first time on appeal, and thus we will not review them. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005); *Stanciel v. Gramley*, 267 F.3d 575, 580-81 (7th Cir. 2001).

AFFIRMED