# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1192

_____

Talmadge Scobey,

          Appellant,

v.

Nucor Steel-Arkansas,

          Appellee.

\* Appeal from the United States
\* District Court for the
\* Eastern District of Arkansas.

_____

Submitted: December 11, 2008
Filed: August 25, 2009 (Corrected August 26, 2009)

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Talmadge Scobey appeals the district court's[1] dismissal on summary judgment of his lawsuit alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. We affirm.

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

I.

In 1998, Scobey began working at Nucor Steel in Hickman, Arkansas. From 1999 to 2005, he worked as a "ladle man" at the steel mill, a dangerous and demanding position that involved the handling of thousands of pounds of molten steel. This position paid between $80,000 and $90,000 and allowed Scobey to work on a rotating shift.

This suit arises from Nucor's demotion of Scobey to a position in the company's shipping department for having incurred four unexcused absences from April 10-13, 2005, due to drunkenness. Scobey also had two prior unexcused absences in February 2005. Under Nucor's attendance policy, on the "fourth occasion" of an employee's unexcused absence that employee may be terminated from the company.

On Saturday, April 9, 2005, Scobey attempted to contact his direct supervisor, Kirby Teeter, and left him a message asking him to return Scobey's call, apparently without explaining the reason for the call. Although Teeter attempted to return the call on April 10, he did not speak with Scobey until April 11. Later on April 9, Scobey called Randy Blakemore, another supervisor and a friend of Scobey's, and disclosed that his ex-wife's father had passed away and asked how to arrange time off from work in order to attend the funeral. Blakemore told him that he should call into work and arrange a swap with another employee. Scobey then called Paul Seratt, a "lead man" at Nucor, to ask if he could take Wednesday, April 13, off from work to attend the funeral. Serratt told Scobey that he could attend the funeral if, while at work the next day, he arranged for a co-worker to work his shift.

On Sunday, April 10, Scobey did not come to work and called Seratt while intoxicated. Seratt stated that:

[Scobey] said he was through and done with us, he was very emotional and I was very concerned over his mental state at the time. I asked him not to do anything stupid, call in for Monday and come and talk to Kirby [Teeter], . . . or myself over what he wanted to do or what his options were.

Seratt then called Blakemore to express his concerns about Scobey's welfare. Later that night, Scobey called and told Blakemore that he was "done, through" and then hung up the phone. Worried about Scobey's state of mind, Blakemore called Scobey back and then met with him in person. During their conversation Scobey complained to Blakemore about the pressure Nucor put on its employees.

On Monday, April 11, Teeter spoke with Scobey concerning his call on April 9. Scobey told Teeter that he had suffered a nervous breakdown and then hung up the phone without any further explanation. Teeter stated in an affidavit that Scobey's speech was slurred and that he had the impression that Scobey was intoxicated. Due to previous incidents of dishonesty, Teeter did not believe Scobey's claim of a nervous breakdown and thought he was making excuses to avoid work because he was intoxicated. Then, Scobey called Steve Segars, a shift manager at Nucor, and told him that, due to the death of his former father-in-law and some personal problems, he would not be back at work for a while. Next, Scobey drove to Seratt's house and returned a ladder he had borrowed, but refused to speak with him. On April 12, Scobey did not show up at work and did not contact anyone at Nucor.

On April 13, Scobey missed work for the fourth consecutive day. He called and left a message with Kellie Crain, Nucor's Human Resources Manager and the person in charge of designating FMLA leave, saying that he would call her the next day. On April 14, Scobey called Blakemore and told him that he could not recall the previous four days and that he wanted some help. Blakemore told Scobey to contact HR Manager Crain. However, Scobey and Crain were unable to reach each other until April 19. On April 15, Scobey visited a physician. The physician diagnosed Scobey

-3-

with hypertension, but did not mention depression or alcoholism and did not state that he needed time off from work. When Scobey and Crain spoke on April 19, Scobey told Crain that he had an alcohol problem and that he was depressed. Crain set up an appointment with the Employee Assistance Program ("EAP") for the next day.

On April 20, Scobey was assessed at Nucor's EAP, which referred him to Lakeside Behavioral Health System for inpatient treatment of alcoholism and depression. On April 26, Lakeside discharged Scobey and transferred him to outpatient care following diagnoses for alcohol dependence, alcohol withdrawal, depression, post-traumatic stress disorder, hypertension, and job/family impairment. Scobey terminated his outpatient care before its completion. Despite this, Nucor's EAP told Crain that Scobey had completed his initial treatment program. Nucor did not designate Scobey's absences for treatment as FMLA leave, but designated it as paid leave from the company.

On May 20, Scobey met with Nucor's plant manager, Sam Commella, to determine the appropriate discipline. During the meeting, Commella reminded Scobey that Nucor's absenteeism policy permitted termination after four consecutive, unexcused absences. Although he admitted to having a "taste" of beer a few days earlier, Scobey asked for a second chance. Commella agreed that Scobey had made efforts to improve his behavior, and that he could continue his employment with Nucor. However, Commella suspended Scobey for three days and demoted him to an entry-level position in Nucor's shipping department. This new position resulted in a 40-50 percent reduction in Scobey's pre-demotion pay and required that he work the night shift. Scobey now states that he interpreted his demotion as an attempt by Nucor to force him to quit. Nonetheless, Scobey did not object at the time to his demotion and, during the first two weeks of his new position, he received a pay raise. Soon thereafter and without notifying Nucor of his intent to leave, Scobey stopped coming to work.

Scobey then sued Nucor, asserting claims of interference and discriminatory retaliation under the FMLA. The district court dismissed both claims on summary judgment. The court dismissed his interference claim on the ground that Scobey had failed to provide notice that his four absences from April 10 to 13 might be FMLA-qualifying leave. The court dismissed his retaliation claim on the ground that there was no genuine dispute as to whether Nucor demoted Scobey for absences that were not protected by the FMLA.

## II.

We review a grant of summary judgment de novo. Battle v. United Parcel Serv., Inc., 438 F.3d 856, 864 (8th Cir. 2006). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the grant of summary judgment, we view the evidence in favor of the non-moving party. Battle, 438 F.3d at 864.

"Under the [FMLA], an eligible employee is entitled to up to twelve weeks of unpaid leave during a twelve-month period '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Rask v. Fresenius Med. Care N. Am., 509 F.3d 466, 471 (8th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)). "A 'serious health condition' is any 'illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.'" Phillips v. Mathews, 547 F.3d 905, 909 (8th Cir. 2008) (quoting 29 U.S.C. § 2611(11)). Under our case law,

> [t]here are two types of claims under the FMLA: (1) "interference" or "(a)(1)" claims in which the employee alleges that an employer denied

or interfered with his substantive rights under the FMLA and (2) "retaliation" or "(a)(2)" claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights.

Id. (quotation omitted) (citing 29 U.S.C. § 2615(a)(1)-(2)).  But see id. at 913-14 (Colloton, J., concurring) (arguing that claims alleging retaliation against an employee for exercising his or her FMLA rights are properly understood as interference claims under section 2615(a)(1), not discrimination claims under section 2615(a)(2)). Scobey appeals the summary dismissal of his interference and retaliation claims.

"In order to state a claim for interference under the FMLA, [Scobey] must have given notice of [his] need for FMLA leave." Phillips, 547 F.3d at 909.  Although the FMLA statute does not define the type and timing of the notice required when the need for leave is unforeseeable, the Department of Labor's ("DOL's")

> regulations provide some considerable guidance, and they are generous to employees.  Notice must be given "as soon as practicable," but "the employee need not explicitly assert rights under the FMLA or even mention the FMLA" to require the employer to determine whether leave would be covered by the FMLA.

Rask, 509 F.3d at 471 (quoting 29 C.F.R. § 825.303(a), (b) (2007)).  Although recent amendments to the DOL's regulations have somewhat curtailed this generosity, the regulation in place during the events giving rise to this lawsuit stated that, after notice had been given

> [t]he employer will be expected to obtain any additional required information through informal means.  The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303(b) (2005).[2]

However, even before the recent amendments, we have held that an employee must do more than merely call in sick to trigger an employer's duties under the FMLA. "Although the employee need not name the statute, he must provide information to suggest that his health condition could be serious." Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005) (citation omitted). Cf. Thorson v. Gemini, Inc., 205 F.3d 370, 381 (8th Cir. 2000) ("An employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work."); Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir. 1999) ("Under the FMLA, the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave."). "Employees thus have an affirmative duty to indicate both the need and the reason for the leave, and must let employers know when they anticipate returning to their position." Woods, 409 F.3d at 990-91 (quotation omitted). "The employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." Rask, 509 F.3d at 472. "To hold otherwise would create an unreasonable burden for employers, requiring them to investigate virtually every absence to ensure that it does not qualify for FMLA leave." Id.

---

[2] The current version of section 825.303(b), which became effective on January 16, 2009, puts in place a more stringent notice standard—

> [T]he employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. The employer will be expected to obtain any additional required information through informal means. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying.

The FMLA was designed to protect, in relevant part, the reasonable medical needs of employees with serious health conditions within the limits set by the employer's legitimate interest in managing its business. See 29 U.S.C. § 2601(a)(4), (b)(2), (b)(3); Woods, 409 F.3d at 991. As a means of balancing the employee's reasonable needs and the employer's legitimate interests, an employer may, upon receiving timely and adequate notice of an employee's possible incapacity, request a medical certification form stating

> (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; . . . [and] [4] for purposes of leave [in the instant case], a statement that the employee is unable to perform the functions of the position of the employee[.]

29 U.S.C. § 2613(b)(1)-(b)(3), (b)(4)(B). If it doubts the validity of the first medical certification for any reason, an employer may, at its own expense, seek a second opinion and, when there is a conflict between the first and second certifications, it may seek a third. Id. § 2613(c)(1), (d)(1).

Scobey contends that he provided Nucor with sufficient and timely notice that he had a serious health condition requiring FMLA leave during the four unexcused absences from April 10-13. Having received proper notice, he argues, Nucor failed to follow the FMLA's procedures designed to protect employers by not requesting a medical certification form from a health care provider corroborating that Scobey was unable to work. Scobey claims that this alleged failure requires that Nucor be estopped from denying that he had a serious medical condition protected by the FMLA.

Scobey's principal case in support of this argument is Thorson v. Gemini, Inc. In Thorson, an employee missed more than three days of work and, during her absence, provided two notes from her physician stating that she was unable to work.

-8-

205 F.3d at 381. Without requesting a medical certification form, the employer summarily terminated her employment for violating its attendance policy. Id. The employer did not request a medical evaluation until the employee filed suit several months later. Id. at 382. In that situation, this court held that the employee's submission of two doctor's notes advising that she should not work put the employer on notice that she might be eligible for FMLA-protected leave. Id. at 381. This notice triggered the employer's responsibility to count the employee's absence as FMLA leave or inquire further into the matter by requesting a medical certification form. Id. 381-82. Having failed to make further inquiries, the employer could not use later medical evaluations to create a genuine issue of material fact as to the validity of the notes from the employee's physician excusing her from work. Id. at 382.

Whether Thorson applies, however, depends first and foremost on whether Scobey put Nucor on notice that he might be entitled to leave under the FLMA. Only if he provided adequate notice do we need to examine whether Nucor defaulted on any obligation to inquire further. Having examined the record, we conclude that there is no genuine issue of material fact that Scobey did not adequately put Nucor on notice.

Because the DOL's regulations state that the timeliness and adequacy of notice are standards dependent on the facts of each case, we must look at the totality of the surrounding circumstances to determine whether sufficient notice was given. See 29 C.F.R. § 825.303(b). For instance, in Spangler v. Federal Home Loan Bank of Des Moines, the employer had known for many years that the employee's depression had periodically necessitated time off from work. 278 F.3d 847, 852-53 (8th Cir. 2002). Within this context, the employee's statement that she would be absent from work because of her "depression again" put the employer on notice that she might be entitled to FMLA leave. Id. at 852.

In other circumstances we have found notice to be insufficient. In Woods, we held that notice must contain an explanation of the condition rendering the employee unable to work in order to adequately apprise the employer that the condition may be

protected by the FMLA. 409 F.3d at 986, 992-93 (holding that two doctor's notes stating that employee was "advised to remain off work" were inadequate because they did not mention the nature of the illness).[3]  Similarly, in Rask, we held that an employee who informed her employer that she had been diagnosed with depression had not given adequate notice because "[d]epression . . . is a condition with many variations" and the employer would need additional details before being on notice that her condition rendered her unable to work. 509 F.3d at 472-73. Rask distinguished Spangler on the ground that the employer had no previous knowledge of the employee's depression and lacked any indication that it was so serious as to render her unable to work. Id. at 473.

Scobey argues that Woods and Rask impose burdens on employees in excess of the minimal notice obligations in 29 C.F.R § 825.303. Citing a Seventh Circuit case, Scobey argues that "probable cause" is the appropriate standard for determining adequacy of notice. See Aubuchon v. Knauf Fiberglass, GMBH, 359 F.3d 950, 953 (7th Cir. 2004) ("[T]he employee's duty is merely to place the employer on notice of a probable basis for FMLA leave."). Whether the Seventh Circuit uses a standard different in any significant respect from the standard used in this circuit, we need not address. We are bound by our case law, not that of one of our sister circuits.

Scobey also asks us to adopt the "constructive notice" doctrine, which states that "either an employee's inability to communicate his illness to his employer or clear abnormalities in the employee's behavior may constitute constructive notice of a serious health condition." Stevenson v. Hyre Elec. Co., 505 F.3d 720, 726 (7th Cir. 2007) (citing Byrne v. Avon Prods., 328 F.3d 379, 381-82 (7th Cir. 2003)). We have serious doubts about the continuing validity of constructive notice in the FMLA

---

[3]This court took a different approach in Thorson v. Gemini, Inc., where we held that an employee provided adequate notice when she submitted two notes merely stating "no work." 205 F.3d at 374, 381. However, we do not need to harmonize the contradiction between Thorson, on the one hand, and Rask and Woods, on the other, because Scobey failed to provide adequate notice under either standard.

context. The Seventh Circuit in <u>Byrne v. Avon Prods.</u> relied on a previous version of 29 C.F.R. § 825.303(a), which stated that, when leave is unforeseeable, "[i]t is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, *except in extraordinary circumstances where such notice is not feasible*." 328 F.3d at 382 (adding emphasis).[4] Based on this "extraordinary circumstances" exception, the court in <u>Byrne</u> concluded that an employee's aberrant or unusual behavior could, in some cases, be "*itself* notice that something had gone medically wrong, or perhaps [excuse] notice . . . ." <u>Id.</u> at 381. However, the DOL has subsequently deleted the sentence relied on by the court in <u>Byrne</u> and replaced it with language that currently reads: "[i]t generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." 29 C.F.R. § 825.303(a).[5] Now that the DOL has nullified the regulatory basis for the doctrine, we decline to create a constructive-notice exception to an employee's "affirmative duty," <u>see</u> <u>Woods</u>, 409 F.3d at 990-91, to notify his or her employer of the need for leave that might be FMLA-qualifying.

Prior to his four absences from April 10 to April 13, 2005, Scobey had incurred two unexcused absences in February of the same year. Scobey initially requested a day off to attend a funeral, which is not protected by the FMLA. <u>See</u> <u>Andonissamy v. Hewlett-Packard Co.</u>, 547 F.3d 841, 852 (7th Cir. 2008) (employee request to attend nephew's funeral is not a request for FMLA leave). He then called in while intoxicated and stated that he wanted to terminate his employment at Nucor. This was not notice that he needed time off from work. This was notice that he intended to terminate his employment at Nucor. He was intoxicated throughout the four days of his absence and cannot remember any details of this period. While absences for

---

[4]Although the text of the FMLA statute does not provide a notice requirement for unforeseeable leave, the Secretary of Labor has authority to promulgate the requirements set forth in section 825.303 under 29 U.S.C. § 2654.

[5]The amended section became effective on January 16, 2009.

treatment of alcoholism are protected by the FMLA, absences caused by the use of alcohol are not. See Darst v. Interstate Brands Corp., 512 F.3d 903, 908 (7th Cir. 2008) ("[A]bsence because of the employee's use of the substance, rather than for treatment, does not qualify for FMLA leave."). Furthermore, Scobey had several conversations, both over the telephone and in person, with Nucor's representatives during this period. During these conversations, Scobey made no mention of anything that could even plausibly have constituted notice of a need for FMLA leave until April 11, when he remarked to his supervisor Kirby Teeter that he believed he was having a "nervous breakdown" and was "f***ed up." Although he acknowledges that intoxication is not a serious health condition protected by the FMLA, Scobey argues that such comments should have demonstrated to Nucor that his inebriated state was a manifestation of his underlying depression. However, these comments—especially in the context of Scobey's previous unexcused absences, drunken behavior, and shifting explanations of why he could not come to work—were inadequate to apprise Nucor of any possible obligations under the FMLA. Moreover, even if we assume, for purposes of summary judgment, that Scobey's remark on April 14 to Blakemore that he "wanted to get some help" constituted sufficient notice that Scobey might need some time off in the future for treatment for alcoholism or depression, that remark did not alter the fact that Scobey's immediately preceding absences were not, and did not appear to Nucor to be, protected by the FMLA.

Under our prior cases, Scobey has failed to show that he provided adequate notice to Nucor that he had a "serious health condition" rendering him "unable to work." The cases in which we have held that notice was not inadequate, as a matter of law, involved situations in which the employee provided more information to the employer than Scobey provided to Nucor. See Phillips, 547 F.3d at 919-11 (genuine issue of material fact whether notice was adequate where employer knew that employee needed time off for a doctor's visit relating to a recent accident and employer prepared FMLA paperwork in anticipation of possible need for additional leave); Spangler, 278 F.3d at 852 (genuine issue of material fact whether employee's statement that she needed to miss work due to "depression again" was adequate notice

where employer knew that employee's condition had required previous absences); Thorson, 205 F.3d at 374, 381-82 (two doctor's notes stating "no work" without further explanation constituted sufficient notice). Furthermore, we have also held notice to be inadequate when the employee provided more information than Scobey provided to Nucor. See Rask, 509 F.3d at 473 (holding that a physician's diagnosis of depression, absent details about its severity and resulting incapacity, was inadequate notice); Woods, 409 F.3d at 986, 992-93 (holding that two doctor's notes excusing an employee from work failed to provide sufficient notice because they did not describe the employee's condition).[6] Scobey has fallen short of both what is sufficient, as in Phillips, Spangler and Thorson, and what is necessary, as in Rask and Woods, to create a genuine issue of material fact as to whether he put Nucor on notice of a possible need for FMLA leave. There is no evidence that Nucor had any prior knowledge of Scobey's alcohol problem, and, even if there were, the FMLA only protects absences for alcohol treatment, not alcohol use. Scobey's statements and behavior put Nucor on notice only that he was upset and intoxicated. Thus, Scobey provided Nucor with no basis on which to "distinguish [his absence] from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." Rask, 509 F.3d at 472.

Having failed to provide notice, Scobey's claim that Nucor interfered with his FMLA rights by demoting him for his four unexcused absences from April 10 to April 13 must fail. For this reason, it is unnecessary to reach Scobey's other arguments concerning whether he has successfully demonstrated that he had a serious health condition protected by the FMLA.[7] We can only reach a claim that an employer

_____

[6]Scobey claims that he provided a note from the physician he visited on April 15. However, the doctor diagnosed Scobey with hypertension, not depression or alcoholism, and did not say that his hypertension necessitated the absences.

[7] Scobey argues that Nucor committed an additional violation of the FMLA when it neither designated his subsequent treatment for alcoholism and depression as FMLA leave nor did it request a medical certification form when he informed HR Manager Crain that he needed such treatment. Scobey does not allege this violation

-13-

interfered with an employee's right under the FMLA to take leave for a serious health condition if that employee first demonstrates that he or she notified the employer of the possible need for leave. Having failed to provide adequate and timely notice, any argument about whether Scobey actually had a serious health condition during the relevant time period is moot.

## III.

Scobey's retaliation claim fails for largely the same reasons as his interference claim. He claims that his four unexcused absences were merely a pretext for demoting him in retaliation for using paid leave to obtain treatment for his alcoholism and depression.[8] However, there is no evidence supporting this claim and the four absences, especially when combined with his two previous unexcused absences, were enough to warrant termination under Nucor's attendance policies. Thus, there is no genuine issue of material fact as to whether Nucor was entitled to demote Scobey for the absences he incurred from April 10 to April 13. Having failed to show that he was demoted for absences protected by the FMLA, Scobey cannot show that Nucor "discriminated against him for exercising his FMLA rights." Phillips, 547 F.3d at 909 (quotation omitted).[9] Furthermore, having failed to make out a *prima facie* case for

as a separate claim, however. He alleges that had Nucor requested a medical certification form, he would have been able to show retroactively that he had a serious health condition qualifying for FMLA protection from April 10 to April 13.

[8]The parties agree that the leave Scobey took to obtain in-patient treatment for his alcoholism and depression was FMLA-qualifying.

[9] The obvious similarity between Scobey's "interference" and "retaliation" claims calls into question our case law articulating the two claims available under the FMLA. See, e.g., Phillips, 547 F.3d at 909. An interference claim that an employee suffered an adverse employment action because he or she took leave protected by the FMLA is difficult to distinguish from a retaliation claim that an employer discriminated against such an employee for exercising his or her FMLA rights. 29 U.S.C. § 2615(a)(1) states that "[i]t shall be unlawful for any employer *to interfere*

retaliation, there was no need for the district court to consider whether Nucor's stated reasons for demoting Scobey were a pretext under the burden-shifting framework for FMLA retaliation claims.  See id. at 912.

IV.

Accordingly, we affirm the district court's dismissal on summary judgment of all of Scobey's claims.

BYE, Circuit Judge, dissenting.

The majority is correct in the context of Scobey not being entitled to FMLA leave on the basis of alcohol use, as opposed to alcohol abuse treatment.  See 29 C.F.R. § 825.114(d).  However, I believe there is a genuine issue of material fact as to whether Scobey put Nucor on notice as to his being in need of FMLA leave on the basis of severe depression.  I therefore dissent.

Scobey gave Nucor sufficient notice as to his being in need of FMLA leave on the basis of severe depression because he twice stated he was having a "nervous breakdown."  See Webster's College Dictionary 888 (2d ed. 2000) (defining "nervous breakdown" as "any disabling mental or emotional disorder requiring treatment"); Oxford English Dictionary 515 (2d ed. 1989) (defining "nervous breakdown" as a "term for any severe or incapacitating emotional disorder").  In addition, his other

_with_, restrain, or deny _the exercise of or the attempt to exercise_, any right provided under [the FMLA]." (emphasis added).  The FMLA also provides an additional cause of action against employers who "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2).  This prohibits retaliation of a sort, but not retaliation for an employee's exercise of his or her FMLA rights.  Under the statute, retaliation for exercising one's FMLA rights appears to be just one aspect of what is meant by "interference," not a separate claim.  See Phillips, 547 F.3d at 913-15 (Colloton, J., concurring).

-15-

statements (that he was "through," "f*cked up," and "had some issues"), while they could have just as easily related to his alcohol use and intoxication, led Nucor employees to express concern over his mental state and even possible suicide. For example, Serratt expressed concern over Scobey's mental state, which he relayed to Blakemore. Blakemore was so concerned over Scobey's mental health, including possible suicidal thoughts, that he went to Scobey's house to check on him. And, when Scobey finally spoke with HR Manager Crain, Scobey told her he had both alcohol <u>and</u> mental problems. These statements indicated more than generic depression and gave Nucor notice that Scobey's absences may be the result of a serious health condition entitled to FMLA protection.

Scobey's notice was also timely. Nucor argues Scobey did not give notice he needed treatment until April 14, which it claims was beyond the one or two days notice contemplated by the statute. <u>See</u> <u>Woods v. DaimerChrysler Corp.</u>, 409 F.3d 984, 991 (8th Cir. 2005) (citing 29 C.F.R. § 825.303(a)). I disagree. Rather, the statements indicating a possible need for leave for mental health issues began much earlier. Scobey first expressed his belief he was having a "nervous breakdown" on April 11, only one day after his first absence. His other comments which led Nucor employees to express concern over his mental state began on the day of his first absence, April 10. Therefore, Scobey commenced giving notice on April 10, and this notice became sufficient, at the latest, on April 11, when he stated he was having a "nervous breakdown." While it is probable Nucor simply believed these statements to be excuses or exaggerations because of his obvious intoxication, the statute was satisfied because Scobey gave enough information to indicate a possibility he was incapacitated from work because of mental problems. Once Scobey raised this possibility, it was then incumbent upon Nucor to require substantiation to differentiate between the possible causes. <u>See</u> <u>Thorson v. Gemini, Inc.</u>, 205 F.3d 370, 381-82 (8th Cir. 2000).

I therefore respectfully dissent.

_____