# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1290

_____

Tanya Bosley

*Plaintiff - Appellant*

v.

Cargill Meat Solutions Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 20, 2012
Filed: February 5, 2013

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Tanya Bosley, an employee of Cargill Meat Solutions Corporation ("Cargill"), missed work because of depression and other health issues. Bosley missed the entire month of February 2008. Bosley failed to use Cargill's call-in procedure for absences. Bosley also did not notify Cargill that she would qualify for leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. Cargill terminated Bosley's employment, and Bosley sued Cargill, asserting FMLA entitlement and retaliation

claims. The district court[1] granted Cargill's motion for summary judgment on both claims. Bosley appealed, and we affirm.

## I. *Background*

Tanya Bosley was hired by Cargill in September 2003. Bosley regularly carpooled to work with her coworker, Christine Pilcher. Bosley sometimes missed work due to illness, and she occasionally took leaves of absence under the FMLA. William Crowell was Bosley's supervisor. Sometimes when Bosley was absent from work due to illness, Pilcher would notify Crowell of the absence on Bosley's behalf. On February 1, 2008, Pilcher arrived to pick up Bosley. Bosley told Pilcher that she could not get up due to depression. Bosley missed work that day, and Pilcher informed Crowell that Bosley was absent because she was "sick."

Cargill's attendance policy included a call-in procedure for employees to inform Cargill of any necessary and unavoidable absences through an automated phone system. Under Cargill's policy, failure to comply with the call-in procedure on three consecutive work days would result in a voluntary termination of employment. Bosley was familiar with this policy. She had the call-in number programmed into her phone, and she successfully utilized the procedure on over 100 occasions. Nevertheless, on February 1, Bosley did not call Cargill. In fact, Bosley missed work the entire month of February 2008, and she never used the call-in procedure.

The record shows that between February 1 and February 21, Bosley was conscious, able to get out of bed, able to visit two healthcare providers, and able to communicate coherently. She admitted in deposition testimony that her depression improved and "became not incapacitating around February 15." Or, according to her FMLA paperwork, her condition was no longer incapacitating by February 25.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

-2-

On February 16, during Bosley's absence, David Clark replaced Crowell as Bosley's supervisor. Clark was unaware of Bosley's mental health condition, and he did not know why Bosley was absent. In late February, Clark inquired about Bosley to Cargill's nurses' office; Whitney Crisswell, Cargill's FMLA coordinator; and Laura Elliott, Cargill's human resources manger. No one had any information regarding her absence. On February 27, Cargill terminated Bosley's employment on the basis that she had three consecutive call-in violations between February 1 and 27. On March 3, Bosley went to Cargill to pick up forms for approval of FMLA leave for her missed work during the month of February. That day, Bosley learned of her termination from Elliott.

Bosley filed suit in the district court, asserting entitlement and retaliation claims under the FMLA. Cargill moved for summary judgment. The district court granted summary judgment to Cargill on both claims, finding that Bosley did not meet her obligation to provide notice to Cargill of her need for protected leave under the FMLA. Bosley appeals, asking this court to reverse the district court's grant of summary judgment and to remand.

## II. *Discussion*

Bosley argues that the district court erred in finding that she failed to satisfy her notice obligation under the FMLA. We "review[] a grant of summary judgment de novo." *Rynders v. Williams*, 650 F.3d 1188, 1194 (8th Cir. 2011). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Id.* (quotation and citation omitted). The jury is responsible for weighing the evidence and making credibility determinations, not the court. *Id.* "'[T]he court should deny summary judgment if there is sufficient evidence for a jury to return a verdict for the non-moving party.'" *Id.* (quoting *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 911 (8th Cir. 2011)).

One of the purposes of the FMLA is "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). The FMLA entitles an employee to 12 workweeks of leave during any 12-month period if he or she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is any "illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Bosley styles her claims against Cargill as "interference" and "retaliation" claims. In *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012), we recognized that, although our cases sometimes describe claims brought under 29 U.S.C. § 2615(a)(1) as "interference" claims, "that terminology may not illuminate, because *all* prohibited acts under § 2615(a) appear under the heading '*Interference* with rights.'" *Id.* at 1005 (recognizing FMLA entitlement, retaliation and discrimination as three separate claims under the FMLA). For the sake of clarity, what we formerly described as "interference" claims henceforth shall be called "entitlement" claims. *Id.* Thus, Bosley asserts FMLA entitlement and retaliation claims. In "an entitlement claim[,] an employee claims the denial of a benefit to which he is entitled under the statute." *Id.* In a retaliation claim, on the other hand, an employee claims that "the employer . . . t[ook] adverse action against the employee" for "oppos[ing] any practice made unlawful under the FMLA." *Id.* at 1006.

### A. *Bosley's FMLA Entitlement Claim*

"To state [an entitlement claim] under the FMLA, [Bosley] must have given notice to [Cargill] of her need for FMLA leave." *Clinkscale v. St. Therese of New Hope*, 701 F.3d 825, 827 (8th Cir. 2012).

The Department of Labor has issued regulations, pursuant to the authority granted by § 2654 of the FMLA, governing the respective notice obligations of

employers and employees. 29 C.F.R. § 825.303 (2008). At the relevant times, those regulations provided,[2] in pertinent part:

> (a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.
>
> (b) The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means. Notice may be given by the employee's spokesperson (e.g., spouse, adult family member or other responsible party) if the employee is unable to do so personally. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

*Id.*

> In *Scobey v. Nucor Steel-Arkansas,* 580 F.3d 781 (8th Cir. 2009), we reiterated our rigorous notice standard for employees seeking to use FMLA leave for absences. Employees have an affirmative duty to

---

[2]The language of 29 C.F.R. § 825.303 was subsequently amended, effective January 16, 2009.

indicate both the need and the reason for the leave, and must let employers know when they anticipate returning to their position.

*Brown v. Kansas City Freightliner Sales, Inc.*, 617 F.3d 995, 997 (8th Cir. 2010) (quotations, alteration, and citations omitted). "Before an employee can claim FMLA protection, . . . the employee must put the statute in play—she must notify her employer that she may need FMLA leave." *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 900 (8th Cir. 2010) (citing *Scobey*, 580 F.3d at 787). "A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave . . . ." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005).

### 1. *Pilcher as Spokesperson*

The regulatory language in place in February 2008 provided that "[n]otice may be given by the employee's spokesperson (e.g., spouse, adult family member or other responsible party) if the employee is unable to do so personally." 29 C.F.R. § 825.303 (2008). Bosley argues that Pilcher gave notice to Cargill of Bosley's absence from work due to depression and, hence, of her need for FMLA leave. Bosley points to Pilcher's deposition testimony regarding the conversation that Pilcher had with Crowell on February 1. Pilcher testified as follows:

Q.  Did [Bosley] tell you that she was depressed again?

A.  Yeah.

Q.  So did she tell you to tell Willie [Crowell]?

A.  Yes.

Q.  Okay. So did you tell Willie that day?

A.  Yes.

* * *

[Q.] Didn't you tell Willie that she had some medication issues?

A. I told Willie she was sick.

Q. But you didn't say anything that she was trying to get her medication regulated?

A. I may have.

Q. Did you tell Willie that she was depressed again?

A. I don't know what days I told Willie she was depressed or wasn't depressed.

Q. Okay.
During that course that Tanya was off, did you ever tell Willie that she was depressed again?

A. I told him she was sick. I don't know that I specifically said that she was depressed.

Q. Is it possible that you said that and you just don't remember?

A. There is a chance I did say that, but I don't know if I did or if I didn't.

Q. When you talked to Linda [Elliott], do you remember telling Linda that you said—that you had told Willie that Tanya was depressed?

A. I probably did, because that was a conversation she and I had, yes. So I probably did say she was depressed.

Q. Okay. And do you remember telling Linda that you told Willie that?

-7-

A.     Yeah.

Q.     Okay. Was that not true when you told Linda that, or did you tell Willie that Tanya was depressed?

A.     I don't know what days I told Willie, if she was depressed or wasn't depressed.
It was probably—Depending on what she told me that day is what I responded to Willie.

Q.     Okay. So if Tanya said, "Hey, will you tell Willie I'm still depressed," is that the conversation that you would have taken to Willie?

A.     I would have—Yeah, I would have just told Willie that.

Q.     And so you would have said, "Willie, hey, Tanya is depressed again. She's not coming in"?

A.     Yeah.
But there are days I didn't tell him that, I know.

Q.     And I'm not talking about the days that you didn't tell him. I'm just trying to kind of figure out what you actually told Willie on the days that you did.
And I understand you didn't tell him every single day.

A.     Right. I didn't tell him every single day.

Q.     But you did tell him a few times at least?

A.     Yeah.

Q.     And you told him that Tanya was depressed?

A.     I would say I did, but maybe I didn't.
I don't know. I really don't remember if I did or did not specifically.

Q.     Is that just because it was a while ago and your memory has faded or—

A.     I don't remember.

Q.     Okay.
If you told Linda that you told Willie that Tanya was depressed, would you have lied to Linda during that interview?

A.     No. If I felt I told him—that I said that, then I felt I told him I said that. It's not something I would have said if I didn't tell him.
I know I said it, but I don't know when I said it.

Strangely, even Pilcher's affirmation that at some point she told Crowell that Bosley was "depressed" is directly contradicted by a statement in her own affidavit. Paragraph 7 of Pilcher's affidavit states: "I never informed Mr. Crowell or anyone else at Cargill [that] Ms. Bosley was unable to come to work due to depression, anxiety, or any particular medical condition. I only informed Mr. Crowell [that] Ms. Bosley was not coming to work because she was sick."

Pilcher's equivocal and self-contradictory recollections of what she told Crowell fail to show that Bosley gave notice through Pilcher. The only reasonable inference that could be drawn in Bosley's favor is that Pilcher simply did not recall whether she told Crowell that Bosley was depressed. "An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur." *To v. U.S. Bancorp*, 651 F.3d 888, 892 n.2 (8th Cir. 2011). After reviewing the record, viewing the evidence in the light most favorable to Bosley, and drawing all reasonable inferences in Bosley's favor, we hold that Bosley

has provided insufficient evidence for a reasonable jury to find that she gave Cargill adequate notice under the FMLA.

### 2. *"Extraordinary Circumstances" Excuse*

Bosley argues that Department of Labor regulations excuse the notice requirement where "extraordinary circumstances" make the giving of such notice unrealistic. The regulation provides, in pertinent part:

> When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible.

29 C.F.R. § 825.303(a) (2008). Cargill responds that the regulation does not excuse the notice requirement altogether in extraordinary circumstances; rather, it merely modifies the general rule that "as soon as practicable" means "one or two working days." *Id*. Cargill's interpretation is correct. The language of the regulation does not completely excuse the notice requirement but only extends the allowable notice period beyond two working days.

We must decide whether Bosley gave notice "as soon as practicable under the facts and circumstances of [her] particular case." *Id.* Bosley did not make contact with Cargill until March 3, 2008—32 days after she last utilized the call-in procedure. Bosley admitted in her deposition that her depression "became not incapacitating around February 15." Or, according to her FMLA paperwork, her condition was no longer incapacitating by February 25. Because 2008 was a leap year, March 3 was one full week beyond February 25. Thus, Bosley did not contact Cargill for at least five full working days after her depression "became not incapacitating." Bosley states

-10-

no facts constituting extraordinary circumstances to justify her delay in notifying Cargill. As a matter of law, Bosley's notice requirement was not excused on the basis of "extraordinary circumstances."

### 3. *"Constructive Notice" Excuse*

Bosley argues that her behavior could have placed Cargill on constructive notice of her need for FMLA leave. Bosley relies principally on *Byrne v. Avon Products, Inc.*, 328 F.3d 379 (7th Cir. 2003), in arguing that the Department of Labor regulations in effect at the time recognized constructive notice of the need for leave. But as Cargill points out, we expressly rejected *Byrne* in *Scobey*. There, we voiced our "serious doubts about the continuing validity of constructive notice in the FMLA context." 580 F.3d at 788. As we explained:

> The Seventh Circuit in *Byrne v. Avon Prods.* relied on a previous version of 29 C.F.R. § 825.303(a), which stated that, when leave is unforeseeable, "[i]t is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, *except in extraordinary circumstances where such notice is not feasible.*" 328 F.3d at 382 (adding emphasis). Based on this "extraordinary circumstances" exception, the court in *Byrne* concluded that an employee's aberrant or unusual behavior could, in some cases, be "*itself* notice that something had gone medically wrong, or perhaps [excuse] notice . . . ." *Id.* at 381. However, the DOL has subsequently deleted the sentence relied on by the court in *Byrne* and replaced it with language that currently reads: "[i]t generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." 29 C.F.R. § 825.303(a). Now that the DOL has nullified the regulatory basis for the doctrine, we decline to create a constructive-notice exception to an employee's "affirmative duty," *see Woods,* 409 F.3d at 990–91, to notify his or her employer of the need for leave that might be FMLA-qualifying.

*Id.* at 788 (alterations in original) (footnotes omitted).

Viewing the evidence in the light most favorable to Bosley, and drawing all reasonable inferences in her favor, there are no genuine issues of material fact as to her failure to satisfy her notice obligation under the FMLA. The district court did not err in dismissing Bosley's entitlement claim.

B. *Bosley's FMLA Retaliation Claim*

Bosley lacks any "direct evidence of retaliation." *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008). As a result, "we analyze her FMLA retaliation claim under the *McDonnell Douglas* burden-shifting framework."[3] *Id*.

> [Bosley] must first establish a prima facie case of retaliation, which requires her to show that she exercised rights afforded by the [FMLA], that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action.

*Id*. (quotation and citation omitted).

An employee's meeting his or her notice obligation to an employer of a need for FMLA leave is essential to a FMLA retaliation claim. *See, e.g.*, *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1000 (8th Cir. 2011) ("In order to benefit from the protections of the statute, an employee must provide her employer with enough information to show that she may need FMLA leave." (quotation, alterations, and citation omitted)). Here, Bosley notified Cargill that she would seek FMLA leave only after Cargill had terminated her employment. Because Bosley did not meet her FMLA notice obligation to Cargill while employed, her termination could not have been retaliation. There is no genuine issue of material fact regarding Bosley's failure to meet her notice obligation, so Bosley fails to make a prima facie case for FMLA retaliation. The district court did not err in dismissing her claim.

---

[3]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973).

### III. *Conclusion*

Because we conclude that the district court did not err in dismissing Bosley's claims, we affirm.

_____