# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3466

_____

Buddy Rynders,                           *
                                         *
            Plaintiff-Appellant,         *
                                         *   Appeal from the United States
      v.                                 *   District Court for the Western
                                         *   District of Arkansas.
Larry Williams, In His Official and      *
Individual Capacity as Judge of          *
Garland County, Arkansas,                *
                                         *
            Defendant-Appellee.          *

_____

Submitted:  June 15, 2011
    Filed:  August 18, 2011

_____

Before BYE and MELLOY, Circuit Judges, and ERICKSEN,[1] District Judge.

_____

MELLOY, Circuit Judge.

Buddy Rynders sued Larry Williams for wrongful termination, in violation of Rynders's rights under the First Amendment and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. The district court granted summary judgment in favor of Williams, and Rynders appeals. We reverse.

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

## I.

On June 8, 2003, Rynders commenced working for the Garland County, Arkansas Road Department. Nearly three years later, on April 6, 2006, Rynders was involved in a workplace incident with three other Road Department employees. During the incident, Rynders purportedly came to the defense of one employee against the other two, who were carrying a rock and a knife. Rynders called the police and filed charges against the two attacking employees, but the charges were later dropped. Rynders maintains that Williams, who was responsible for the Road Department as part of his duties as judge for Garland County,[2] had the prosecutor dismiss the charges. Rynders also alleges that Williams expressed his disappointment in how the situation was handled.

Since that incident, Rynders claims that his coworkers at the Road Department have harassed him. Specifically, Rynders alleges that he has received death threats and that his coworkers have hidden his time card in an effort to make him appear late or absent. This harassment only intensified, according to Rynders, after Rynders found illicit narcotics in a County vehicle and reported it to Jerry Lampo, the Assistant Road Commissioner. Rynders stresses that he has reported the harassment on numerous occasions to no avail.

On December 17, 2007, a local paper published a letter Rynders wrote to the editor. In that letter, Rynders asserted that the Garland County Quorum Court, the legislative body for Garland County, was unjustifiably refusing to raise the wages of County employees. The letter mentioned Williams only once, stating that: "Garland County Judge Larry Williams has asked for raises and been turned down on more than one occasion."

---

[2]A county judge in Arkansas is one of the chief executive officers for a county and performs no judicial functions.

On September 12, 2008, Bobby Maughan, the Road Commissioner appointed by Williams to run the Road Department, issued Rynders a written warning, stating in total: "You have been late to work on several occasions. In August you were late 13 times and so far in September you have been late 7 times. This is not acceptable. If this behavior continues, further disciplinary action will be taken." According to Rynders, he informed the Road Department at this time that some of his tardiness and absences were due to his coworkers hiding his timecard and that some tardiness and absences were due to severe complications from taking an ace inhibitor, a medication primarily used for the treatment of high-blood pressure. Rynders also claims that he requested and was denied information on how to take FMLA leave even after stating that he may have to miss more work due to his illness. In his own words:

> Bobby Maughan, Jerry Lampo, Debbie Holt or Hope (secretary) and Cindy Archer (office administrator) were present at this meeting. During the meeting, I explained that many of my tardies were due to a chronic illness that I was trying to get diagnosed, that I was seeing my doctor, and that I might have to go out of state to a specialist. I told them that I was having trouble breathing, and that I was dizzy a lot, that I was blacking out, that I was coughing severely, and vomiting. I would miss work because I had to see a doctor; was too ill to do my job due to these symptoms; or they would cause me delays in getting to work. . . . I asked them for FMLA paperwork at that time. They did not give it to me. I repeatedly asked for months afterward and was not given the paperwork. . . . Jerry Lampo has claimed that I lost interest in the leave after finding out it was not paid. This is a lie on his part.

While acknowledging that this conversation occurred and that Rynders inquired about the FMLA, Lampo testified that Rynders never asked for any FMLA paperwork, lost interest in any leave after finding out that it was unpaid, and never discussed the issue again.

On January 13, 2009, Lampo gave Rynders a written suspension. In that letter, Lampo stated that Rynders was being suspended because Rynders had been late to

work fifty-two times in 2008 and because he had abused sick time by taking twenty days in 2008, even though he did not have paid time for seven of those days. The letter further informed Rynders that the suspension was to last three days until a final decision on Rynders's employment was made and that, if Rynders wanted to respond, Rynders must do so in writing by January 15, 2009. The letter finally stated that Garland County would be making the final decision on Rynders's employment on January 16, 2009.

According to Rynders, he subsequently prepared a response and attempted to deliver it to Lampo on January 15, 2009. Rynders maintains that Lampo was acting as the head of the Road Department by this point because of Maughan's declining health and that Lampo refused to accept his written response, stating that Rynders should "go to the Judge's office because it was out of his hands."

Before going to Williams's office, Rynders called a friend, Diane Silverman, and asked her to accompany him so that he would have a witness. Silverman agreed, and they traveled to Williams's office, where Williams agreed to meet only with Rynders. According to Silverman, she was forced to wait outside of his office, but she was nonetheless able to hear most of the conversation by sitting next to the door and later a wall. Both Silverman and Rynders assert that Williams told Rynders in the ensuing conversation: "I am firing you because of . . . that letter you wrote about my finance committee." Williams denies making this statement or even being involved in the decision to terminate Rynders, but he does admit that he had the authority to fire Rynders and that he had been apprised of Rynders's employment situation prior to his termination. Moreover, Williams admits he used Rynders's letter to the editor as an example of Rynders's disloyalty during his conversation with Rynders.

On January 20, 2009, after temporarily extending Rynders's January 13 suspension, Lampo sent Rynders a letter stating that Rynders's employment had been terminated. Rynders subsequently filed suit against Williams in both his individual

-4-

capacity and official capacity as judge of Garland County pursuant to the First Amendment, via § 1983, and to the FMLA. In his lawsuit, Rynders alleges that Williams violated his First Amendment rights by firing him for writing the letter to the editor and for reporting the 2006 altercation to the police. Rynders also asserts that Williams interfered with his rights under the FMLA by refusing to provide him notice of his rights under the Act and by retaliating against him for taking medical leave to which he was entitled.

Williams moved for summary judgment, and the district court grant the motion. With respect to Rynders's First Amendment claims, the district court concluded that Rynders could not prevail as a matter of law against Williams in either his personal or official capacity because:

> [v]iewing the facts in a light most favorable to [Rynders], the Court cannot find [Williams] terminated [Rynders] for his involvement in the criminal proceedings or in the writing of the letter to the editor. There is no indication that [Williams] was in any way responsible for the disciplinary actions, including warnings and suspension, taken against [Rynders] that led to his termination. The evidence before the Court is that [Rynders] was terminated for his poor attendance at work.

The district court further concluded that summary judgment was appropriate on Rynders's First Amendment claim against Williams in his official capacity because Rynders failed to present sufficient evidence demonstrating that Garland County had a policy of retaliating against employees who exercised their First Amendment rights. In reaching its decision, the court acknowledged Rynders's "claims that [Williams] told him he was being fired for the letter," but dismissed this evidence as insufficient to create a factual question on the reason for Rynders's termination. The district court also found it unnecessary to consider the extent to which Williams was responsible for setting Garland County policy given its conclusion that Williams was not involved in the decision to terminate Rynders.

-5-

Similarly, the district court rejected Rynders's FMLA claims, concluding that Rynders failed to "provide [Williams] with adequate notice that he suffered from a serious health condition or that he was requesting FMLA leave." The court found "no evidence supporting [Rynders's] claim that either [Williams] was aware of his alleged serious health condition, or that adequate notice was provided that would indicate [Williams] should have been aware of the condition." While the district court did mention Rynders's conversation with the Road Department on September 12, 2008, the district court found this insufficient to create a genuine issue of material fact as to whether Williams knew or should have known that Rynders was suffering from a serious health condition and might be entitled to leave under the FMLA. Rynders appeals the district court's grant of summary judgment on both claims.

## II.

This court reviews a grant of summary judgment de novo. Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." Rau v. Roberts, 640 F.3d 324, 327 (8th Cir. 2011) (internal quotation marks omitted). "Credibility determinations and the weighing of the evidence are jury functions, not those of a judge," Wierman, 638 F.3d at 993, and "[t]he court should deny summary judgment if there is sufficient evidence for a jury to return a verdict for the non-moving party." Young-Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909, 911 (8th Cir. 2011)

## A.

Rynders argues that the district court improperly granted summary judgment on his First Amendment claims by failing to properly consider the substantial amount of evidence indicating Williams had the authority to fire Rynders and did so because

-6-

of Rynders's 2007 letter to the editor.  Rynders further contends that the district court erred in concluding that Williams could not be held liable in his official capacity in light of his evidence that Williams, as Judge of Garland County, had the authority to set Road Department policy.  We agree in part.

"A public employer may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."  McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cnty., Mo., 471 F.3d 918, 919 (8th Cir. 2006) (internal quotation marks omitted).  This is because "public employees do not surrender all their First Amendment rights by reason of their employment."  Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).  Indeed, "[a] public employee retains a degree of First Amendment protection when [he] speaks as a citizen addressing matters of public concern."  Bonn v. City of Omaha 623 F.3d 587, 592 (8th Cir. 2010).  To establish a prima facie case of retaliatory termination, a plaintiff must both allege and prove: (1) his speech was protected by the First Amendment; (2) the governmental employer discharged him from employment; and (3) the protected speech was a "substantial or motivating factor in the defendant's decision to take the adverse employment action."  Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654–55 (8th Cir. 2007).  "If the plaintiff meets this burden, the burden shifts to the defendant to demonstrate that the same employment action would have been taken in the absence of the protected activity."[3]  Id.

Construing the record in a light most favorable to Rynders, we believe that a genuine issue of material fact exists as to whether Williams terminated Rynders's employment because of the letter Rynders wrote to the editor in 2007.  As County Judge, Williams had the responsibility to oversee the Road Department and the authority to make all personnel decisions, including the decision whether to continue

---

[3]We note that some ambiguity exists in our jurisprudence as to the appropriate burden-shifting framework to apply in First Amendment retaliation cases that do not involve "direct evidence."  See Davison, 490 F.3d at 655 n.5.  We need not comment on this issue because, as discussed *infra*, the record includes direct evidence that Williams fired Rynders in response to the 2007 letter to the editor.

or terminate Rynders's employment. Moreover, Rynders, through his own testimony and that of Silverman, presented substantial, direct evidence that Williams used his authority to punish Rynders for writing the 2007 letter. Specifically, Lampo purportedly stated that Williams was making the final employment decision and Williams purportedly stated he was firing Rynders because of the letter. While certain aspects of the record do indicate that Rynders was fired due to his frequent absenteeism and tardiness, such evidence only goes to the credibility of Rynders's and Silverman's statements. It does not demonstrate, as a matter of law, that Rynders's employment would have been terminated regardless of the 2007 letter. Accordingly, because a court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), we reverse the grant of summary judgment on this ground.

We also believe that summary judgment should not have been granted in favor of Williams in his official capacity without a full consideration of whether he set the employment policies for the Road Department. Rynders's suit against Williams in his official capacity is, in effect, a suit against Garland County, and Garland County can be liable "if one of its customs or policies caused the violation of [Rynders's] rights." Copeland v. Locke, 613 F.3d 875, 882 (8th Cir. 2010). Although rare, a public official's single incident of unconstitutional activity can establish the requisite policy if the decision is "taken by the highest officials responsible for setting policy in that area of the government's business." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); Davison, 490 F.3d at 659 ("In this scenario, municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." (alteration omitted) (internal quotation marks omitted)). Since Rynders has created a genuine issue of material fact as to whether Williams terminated him for the 2007 letter to the editor, the district court should have considered the extent to which Williams set Road Department policy before granting summary judgment on this ground and should do so on remand.

B.

Rynders also argues that the district court erred in granting summary judgment on his interference and retaliation claims under the FMLA. According to Rynders, his conversation with the Road Department on September 12, 2008, as well as his subsequent conversations, put Williams on notice that he was suffering from a serious medical condition and might have been in need of FMLA leave. We agree in part.

"The FMLA entitles an employee to twelve work-weeks of leave during any twelve-month period if [he] has a serious health condition that makes [him] unable to perform the functions of [his] position." Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871 (8th Cir. 2010). A serious health condition "means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). "There are two types of claims under the FMLA: (1) interference . . . claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) retaliation . . . claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." Phillips v. Mathews, 547 F.3d 905, 909 (8th Cir. 2008) (internal quotation marks omitted).

"A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave . . . ." Woods v. DaimlerChrysler Corp., 409 F.3d 984, 991 (8th Cir. 2005); see also Scobey v. Nucor Steel-Ark., 580 F.3d 781, 789–90 (8th Cir. 2009). An employee provides adequate notice to the employer "when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." Thorson v. Gemini, Inc., 205 F.3d 370, 381 (8th Cir. 2000) (internal quotation marks omitted). The employee "need not invoke the FMLA by name in order to put an employer on notice." Id. "Our cases instruct that the adequacy of an employee's notice requires consideration of the totality of the circumstances and is typically a jury question."

<u>Murphy v. FedEx Nat'l LTL, Inc.</u>, 618 F.3d 893, 903 (8th Cir. 2010) (citation omitted).

Viewing the evidence in a light most favorable to Rynders, we believe that a genuine issue of material fact exists as to whether Williams received notice in his official capacity but not as to whether he received notice personally. As stated earlier, the suit against Williams in his official capacity is a suit against Garland County, and crediting Rynders's testimony, Rynders informed the Road Department on September 12, 2008, of his exact medical condition, his debilitating symptoms resulting from the condition, and likelihood that he would need to take intermittent leave in the future to cope with the condition and receive treatment. <u>See generally</u> <u>Sarnowski v. Air Brooke Limousine, Inc.</u>, 510 F.3d 398, 401–02 (3d Cir. 2007). In addition, Rynders specifically referenced the FMLA and repeatedly requested information regarding how to properly take leave at that time and over the ensuing months, only to have the Road Department deny his requests. Although Lampo testified that Rynders lost interest in taking FMLA leave after learning it was unpaid, Rynders disputes this with his own testimony. Since we must accept Rynders's statements as true, we hold that Rynders has created a jury question on whether he provided sufficient notice to Garland County starting on September 12, 2008.

By contrast, Rynders has failed to adduce sufficient evidence to create a factual question on whether Williams personally received sufficient notice. Under <u>Darby v. Bratch</u>, aggrieved plaintiffs may bring FMLA claims against public officials in their individual capacities because the FMLA defines an employer as "'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" 287 F.3d 673, 681 (8th Cir. 2002) (quoting 29 U.S.C. § 2611(4)(A)(ii)(I)). Here, however, Rynders has failed to argue how Williams personally received adequate notice and, given the undisputed record that he generally delegated the operation of the Road Department to Maughan and Lampo, we decline to address this

issue. Accordingly, the district court properly granted summary judgment in favor of Williams in his individual capacity on Rynders's FMLA claims.[4]

III.

For the foregoing reasons, we reverse in part and affirm in part. The district court erred in granting summary judgment against Rynders on his First Amendment claims against Williams. The district court also erred in granting summary judgment against Rynders on his official-capacity claims against Williams under the FMLA. The district court, however, properly granted summary judgment against Rynders on his individual-capacity FMLA claims against Williams.

ERICKSEN, District Judge, dissenting in part.

Because I believe that the record would not support a finding that Rynders provided timely notice, I respectfully dissent from that portion of the Court's opinion addressing the FMLA.

The statute and the regulations that create and define an employee's rights under the FMLA require the employee to give timely notice of the employee's intent to use the leave. If practicable, notice must be given in advance of an absence—30 days is the presumptively sufficient advance notice. 29 U.S.C. § 2612(e)(2) ("[T]he employee . . . shall provide the employer with not less than 30 days' notice [of planned medical treatment]."). It is true that in emergencies it is not always possible to give advance notice and the statute recognizes this reality. *See id.* ("[I]f the date of the treatment requires leave to begin in less than 30 days, the employee shall

---

[4]Williams relied heavily on the findings and reasoning contained in the district court's order when making his arguments. To the extent that Williams is advancing any alternative grounds on which to affirm the district court, we decline to consider them so that the district court may first address them.

provide such notice as is practicable."); *see also* 29 C.F.R. § 825.302(a). Even then, though, the employer is to be informed as early as possible, and almost always in a day or two. 29 C.F.R. § 825.302(b) ("[I]t should be practicable for the employee to provide notice of the need for leave either the same day or the next business day.").

There is no dispute that on September 12, 2008, Rynders was issued a written warning about being late to work. Whether Rynders thereafter provided sufficient notice of his need for FMLA is a matter the parties dispute. But there is no dispute that some of Rynders' 20 sick days, and at least some (enough that the employer issued a written warning) of the 52 times he was tardy in 2008, occurred before September 12. Indeed, Rynders does not claim that he did anything at all before September that would have put the Road Department or Williams on notice that he needed FMLA leave, intermittent or otherwise.[5]

Even if an employee is entitled to FMLA leave, and even if that leave is intermittent, the entitlement does not extend to random, unannounced leave or tardiness with no notice at all. Intermittent does not mean retroactive or random at the employee's discretion. *See Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 853 (8th Cir. 2002) ("[T]he FMLA does not provide an employee suffering from depression with a right to 'unscheduled and unpredictable, but cumulatively substantial, absences' or a right to 'take unscheduled leave at a moment's notice for the rest of her career.'" (quoting *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1007 (7th Cir. 2001))). Nothing in the record indicates that Rynders ever—before or after September 12—gave advance notice, or even "such notice as is practicable" after the fact, that he had a serious health condition that would cause him to be unable to notify the County on any given occasion of his expected time of arrival. And, but for an

---

[5]Rynders gave sworn testimony before the Garland County Quorum Court on February 19, 2009, only a portion of which is part of the record before us. In support of his argument that an issue of fact exists as to notice, he relies on an affidavit he prepared in response to Williams' motion for summary judgment.

absence from January 8 to 12, he does not claim to have given advance or remotely contemporaneous notice that his many absences were due to such a condition. This is not in keeping with the letter or spirit of the FMLA.

FMLA leave is a type of "unusual and privileged absence" and an employer must be made aware that an employee may need that sort of absence. *Murphy v. Fedex Nat'l*, 618 F.3d 893, 900 (8th Cir. 2010) (internal quotation marks omitted). "To permit otherwise would enable an employee to blind-side her employer by taking a generic leave request and retroactively transforming it into an FMLA claim." *Id*. Rynders "put the statute in play" only after being reprimanded for excessive tardiness.

Even assuming that Rynders's self-described medical ailments would be sufficient to persuade a jury that he had a serious medical condition sufficient to trigger FMLA protection—as opposed to ordinary sick leave—his FMLA claims fail, in my opinion, because he has not produced evidence sufficient to persuade a jury that he gave statutorily adequate notice. I would affirm the district court's dismissal of the FMLA claims.

_____