# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2591

_____

Kenneth Hunt

*Plaintiff - Appellee*

v.

Dale Acosta, Marianna Police Officer, in his individual and official capacity;
Martin Wilson, Chief of Police, in his individual and official capacity; Jimmy
Williams, Marianna Mayor, in his individual and official capacity

*Defendants - Appellants*

City of Marianna, Arkansas

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Delta

_____

Submitted: April 10, 2024
Filed: July 23, 2024

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Kenneth Hunt brought this civil rights action against former City of Marianna
Police Officer Dale Acosta, former City of Marianna Police Chief Martin Wilson,
former City of Marianna Mayor Jimmy Williams, and the City of Marianna. The

district court denied qualified immunity to Officer Acosta, Chief Wilson, and Mayor Williams, and also denied quasi-judicial immunity to Officer Acosta. We reverse in part and affirm in part.

## I. BACKGROUND

On the morning of January 28, 2019, Kenneth Hunt arrived at the Lee County Courthouse to testify as a witness in a criminal case. The presiding county judge generally scheduled cases alphabetically by the last name of the defendant.[1] However, the judge often heard cases involving incarcerated individuals first, proceeding alphabetically through these as well. Hunt was scheduled to testify in the criminal case against Donald Williams, who was incarcerated at the time.

That morning, the county judge began calling cases for those with last names beginning with A-J. Hunt was directed out of the courtroom because the case he was appearing in began with a "W." Hunt, unable to find a place to sit inside the courthouse, went outside. An officer directed Hunt back into the courthouse. Hunt sat on a staircase, where a few other people had congregated, for about 30 minutes. He then got up and began walking down the hallway with the intention of speaking to either the county judge or the county sheriff. As he was walking, Officer Acosta yelled, "Hunt, come here!"

The conversation between Hunt and Officer Acosta was almost immediately confrontational. Officer Acosta informed Hunt that he had to stay out of the courtroom. Hunt replied that he understood and attempted to walk away. Officer Acosta stopped him, in an area close to the county tax collector's office, and said, "Hold on, hold on, you finish when I finish!" Hunt asked, "Hold on for what?"

---

[1]The county judge's order required "all people coming to the courthouse to deal with cases with defendants with last names beginning with A through J, or those dealing with defendants who were in jail, come into the courtroom first, remain in the courtroom until their case was called, and should not be wandering the hallways of the courthouse. Defendants whose last names began with K-Z followed this group."

Officer Acosta then explained, "You finish when I'm finished." Hunt retorted, "You don't tell me when I'm finished." Officer Acosta then threatened, "You are going to listen to what I say, ok. If you do not choose to, I will arrest you for obstruction." Officer Acosta reiterated that Hunt "cannot hang out outside, cannot wander around the courtroom." Officer Acosta also instructed Hunt that if he has "other business in the courts, you need to have a seat right there." Hunt explained that he had other business in the courthouse and asked Officer Acosta if the chief was in. Officer Acosta told Hunt that the chief was in but that if Hunt was not in the courtroom when his case was called, a bench warrant would be issued for him.

Hunt then mistakenly stated that he was a defendant, even though he was appearing in court that day to testify as a victim in a criminal case. Officer Acosta directed Hunt to sit down and wait for his turn. When Officer Acosta repeated this instruction, Hunt asked if he was under arrest. Officer Acosta replied, "You are now." Officer Acosta then ordered another officer to arrest Hunt. Hunt asked Officer Acosta why he was being placed under arrest, and Officer Acosta replied with one word: "Obstruction." Hunt inquired again why he was being arrested, and Officer Acosta told him, "We will discuss no more." The conversation between Hunt and Officer Acosta lasted just under two minutes.

Hunt filed this civil rights lawsuit based on his encounter with Officer Acosta. The parties filed cross motions for summary judgment. The district court denied Hunt's motion and granted in part and denied in part the defendants' motion. The district court dismissed all of Hunt's claims except for his Fourth Amendment claim against Officer Acosta, his failure to train or supervise claim against Mayor Jimmy Earl Williams and Chief of Police Martin Wilson, and his Monell claim against the City of Marianna. The district court denied qualified and quasi-judicial immunity for Officer Acosta and qualified immunity for Mayor Williams and Chief Wilson.

Officer Acosta, Mayor Williams, and Chief Wilson appeal the denial of immunity. The Monell claim against the City was not raised as an issue on appeal, and no argument was made by either party on this claim. Moreover, because Hunt's

municipal liability claim against the City of Marianna is not inextricably intertwined, we are without jurisdiction to review this claim.

## II.    DISCUSSION

We review the denial of absolute and qualified immunity *de novo*. Martin v. Hendren, 127 F.3d 720, 721 (8th Cir. 1997) (absolute immunity); Thurmond v. Andrews, 972 F.3d 1007, 1011 (8th Cir. 2020) (qualified immunity).

### a.    Officer Acosta

#### i.    *Quasi-Judicial Immunity*

Quasi-judicial immunity extends immunity to officials other than judges who exercise a discretionary judgment comparable to that of a judge as part of their official function. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993). This immunity can extend to court employees or other government employees when they perform acts closely related to the judicial function, such as carrying out a judge's order. See, e.g., Hamilton v. City of Hayti, 948 F.3d 921, 928 (8th Cir. 2020) (noting absolute immunity has been extended to acts that are discretionary, taken at the direction of a judge, or taken according to court rules); Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988) (stating clerks of court are immune from actions arising out of acts they were required to perform under court order or at a judge's direction).

The burden rests on Officer Acosta to show that quasi-judicial immunity applies. Antoine, 508 U.S. at 432 n.4. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Id. Officer Acosta asserts that quasi-judicial immunity shields him from all claims because he was enforcing the county judge's standing order, even if he acted improperly when doing so. In support, Officer Acosta provided the district court with a declaration from the county judge that explained his courtroom order and that he "verbally conveyed this order to Dale Acosta and other members of the

Marianna Police Department and had instructed them to enforce [the] order." Even though the county judge did not expressly direct Officer Acosta to corral Hunt, Officer Acosta was given discretion to do so to enforce the judge's directive and courtroom rule. The evidence in the record establishes that Officer Acosta is entitled to quasi-judicial immunity for the initial stop and conversation with Hunt, as he was acting pursuant to a judge's directive and a court rule. See Duba v. McIntyre, 501 F.2d 590, 592 (8th Cir. 1974) (noting a quasi-judicial form of immunity is extended to police and other court officers for carrying out court orders).

The situation changed, however, once Hunt explained to Officer Acosta that was heading to meet with the chief. At this point, Officer Acosta was aware Hunt had other business in the courthouse. Even so, Officer Acosta intercepted and arrested Hunt for "obstruction of justice." Specifically, Officer Acosta stated the arrest was for obstructing the functions of the County Tax Collector's office, which was entirely unrelated to the county judge's order. Because the interaction between Officer Acosta and Hunt extended beyond enforcing courtroom order, Officer Acosta's continued seizure and eventual arrest of Hunt must be analyzed under a qualified immunity standard.

### ii. Qualified Immunity

Interlocutory review of the denial of qualified immunity is limited to "the purely legal issue of whether the facts alleged by the plaintiff are a violation of clearly established law." Raines v. Counseling Assocs., Inc., 883 F.3d 1071, 1074 (8th Cir. 2018) (internal quotation omitted). We consider whether the facts make out a violation of a constitutional or statutory right, and whether that right was clearly established at the time of the alleged misconduct. Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009).

Qualified immunity, when properly applied, protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Here, Hunt "had a clearly established right under the Fourth

-5-

Amendment not to be arrested unless there was probable cause for his arrest." Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996). Our precedent affords an officer the protection of qualified immunity under these circumstances "if there is at least 'arguable probable cause.'" Borgman v. Kedley, 646 F.3d 518, 522-23 (8th Cir. 2011) (quoting Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005)). Probable cause for a warrantless arrest exists "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Id. (quotation omitted).

Hunt was arrested for obstructing governmental operations in violation of Arkansas Code § 5-54-102. Under Arkansas law, a person commits obstruction when he "[k]nowingly obstructs, impairs, or hinders the performance of any governmental function." Ark. Code § 5-54-102(a)(1). "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." Beck v. State of Ohio, 379 U.S. 89, 96 (1964) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). Officer Acosta explained that his confrontation with Hunt occurred just outside the county tax office and distracted the employees inside so much so that they "diverted their focus away from their duties." He contends that because of the facts and circumstances known to him at the time of arrest, he had an objectively reasonable belief that Hunt's argument in front of the tax collector's office disrupted and impeded the tax collector's office employees from performing their tasks. The district court found "it dubious that this interaction should lead to anyone's arrest." We agree.

According to the county tax office's website,[2] the main purpose of the office is to provide titles and registrations for vehicles and vessels, conduct property tax

---

[2]LEE COUNTY TAX COLLECTOR OFFICER IN MARIANNA, ARKANSAS, https://www.countyoffice.org/lee-county-tax-collector-officer-marianna-ar-690/ (last visited July 11, 2024).

-6-

collection, and issue drivers' licenses. The record is devoid of any contemporaneous evidence to show Hunt's conversation with Officer Acosta obstructed, impaired, or hindered any governmental function of the tax office. Hunt did not speak to any county tax employee, did not attempt to enter the tax office, and did not prevent any county tax employee from executing their established duties. As distraction alone does not amount to obstruction, no reasonable person would believe probable cause existed to arrest Hunt for obstruction, nor is there evidence in the record to support a finding of arguable probable cause. Officer Acosta is not entitled to qualified immunity for the continued seizure and eventual arrest of Hunt.

### b. Mayor Williams and Chief Wilson

Hunt alleged that Chief Wilson and Mayor Williams failed to train or supervise Officer Acosta, which led to the underlying unlawful arrest in this case. To succeed on a failure to train or supervise claim, Hunt must show that Chief Wilson and Mayor Williams: (1) had notice of a pattern of unconstitutional acts committed by subordinate officers, (2) were deliberately indifferent to or tacitly authorized the acts, and (3) failed to take sufficient remedial action, which (4) proximately caused injury to Hunt. Brewington v. Keener, 902 F.3d 796, 803 (8th Cir. 2018). Supervisory liability is not vicarious, so Hunt "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

The district court ruled that summary judgment was inappropriate on the failure to train claim because the issue of whether Officer Acosta had probable cause to arrest Hunt needed to be determined by a jury. Because a single incident is insufficient to give notice of a pattern of misconduct, Hunt's arrest alone cannot sustain a failure to train claim against Chief Wilson and Mayor Williams. See Brewington, 902 F.3d at 803.

Other than the scene that unfolded at the Lee County Courthouse, Hunt also relied on conduct described in a prior case, Doe v. Gay, 719 F.3d 679 (8th Cir. 2013).

In Doe, this Court held that the plaintiff presented sufficient evidence from which a reasonable jury could conclude that the Marianna Police Department was deliberately indifferent to past incidents of subordinate misconduct "based on the Department's failure to investigate those incidents, the lack of discipline or termination of officers following those incidents, and the intervention of Marianna officials to stop the termination or punishment of officers accused of violent misconduct." Id. at 688. While the Marianna Police Department is also implicated in this case, the conduct at issue in Doe did not involve Officer Acosta, Chief Wilson, or Mayor Williams. Most, if not all, of the misconduct described in Doe occurred before Officer Acosta, Chief Wilson, or Mayor Williams even began working for the City of Marianna.

Hunt also cited three district court cases where Officer Acosta was named as a defendant. None of those cases have concluded with an adverse judgment against Officer Acosta. Neither the Doe case, nor the district court cases provide factual support for Hunt's current claims. Without any other evidence, Hunt cannot show that Chief Wilson or Mayor Williams had notice of a pattern of unconstitutional acts committed by Officer Acosta at the time of his arrest. We reverse the district court's denial of summary judgment and qualified immunity on Hunt's failure to train claim.

## III.  CONCLUSION

We reverse the district court's denial of quasi-judicial immunity as to Officer Acosta's initial stop of Hunt and as to the denial of qualified immunity for Chief Wilson and Mayor Williams. We affirm the denial of quasi-judicial immunity and qualified immunity as to Officer Acosta's arrest of Hunt. This case is remanded for further proceedings consistent with this opinion.

_____